63 So.2d 429

Succession of TWOHEY.

GERSTNER et al. v. Succession of TWOHEY.

No. 40677.

Feb. 16, 1953.

Adelaide Baudier, New Orleans, for plaintiffs-appellants.

Clem H. Sehrt, Thomas M. Brahney, Jr., and Dudley A. Philips, Jr., New Orleans, for defendant-appellee.

HAMITER, Justice.

Mrs. Margaret Twohey Kelly died intestate in the City of New Orleans, her domicile, on September 29, 1950, she having attained an age in excess of 80 years. Surviving her, and her sole relative and heir at law, was and is a nephew, James E. Twohey, Jr.

Initiating the succession proceedings (No. 300–757 on the docket of the Civil District Court of Orleans Parish), the nephew prayed for an inventory of all property left by decedent. It was taken and disclosed real and personal property having a total value of $14,642.19.

Following the filing of the inventory, Suit No. 302–546 (on the docket of the Civil District Court of Orleans Parish) was instituted by Mrs. Mary Rudolph Gerstner and her husband, Frederick

Anthony Gerstner, in which they prayed for a judgment recognizing them as creditors of the Succession of Mrs. Margaret Twohey Kelly in the sum of $12,375. As stated in the petition this claim, on quantum meruit, is for food and personal care and attention (on an around-the-clock basis) furnished daily by Mrs. Gerstner to Mrs. Kelly during a period of four years commencing in February, 1946 and continuing through February 27, 1950, the recipient allegedly having often remarked that therefor Mrs. Gerstner would some day receive something in return. Petitioners averred that they are due $7.50 per day for the services rendered, or $10,950, plus $1,440 for the food, less $15 which was a token payment made by Mrs. Kelly.

Edward J. Boyle, administrator of the succession, answered the petition and denied the alleged indebtedness.

A few days later the administrator filed in the succession proceedings his first provisional account. Since the account gave no recognition to the claim of the Gerstners they opposed it, making the identical allegations contained in the petition of the mentioned suit and praying that it be amended so as to list them as creditors of the estate for $12,375.

The two causes were consolidated and tried together; and, after the trial, the court rendered separate judgments, ordering in each a dismissal of the demands of the Gerstners as in the case of non-suit. From the judgments the claimants perfected the instant appeals which are docketed here under one number.

The testimony adduced at the trial, given by appellants and several other witnesses, preponderately establishes that appellants are entitled to some remuneration. For many years prior to her death Mrs. Kelly, we find, owned a one-story double house situated on Annunciation Street in the City of New Orleans, she residing in one side thereof and leasing the other to Mr. and Mrs. Gerstner (appellants) for $16 per month, this rental being her only income. Commencing in February, 1946, when nearing the age of 80 years, she found herself in need of daily care and attention because of her crippled condition. At first she could walk to some extent; however, she did so with difficulty, having to balance herself by employing a cane and holding to various objects encountered. For the assistance that she required Mrs. Kelly relied primarily on Mrs. Gerstner, although other neighbors and friends aided materially also; and she occasionally remarked that Mrs. Gerstner would not be forgotten, the remarks implying remuneration after death. Mrs. Gerstner, who was available to and called by Mrs. Kelly at all hours both day and night, rendered many services to her, such as bathing and cleaning the person, tidying the house, laundering bed and other clothing, getting her ready for sleep, preparing and furnishing meals, and lifting her from the floor to the bed from which she sometimes fell at night.

In the latter part of December, 1948, when Mrs. Kelly returned to her home after a stay of several weeks in the Charity Hospital, the demands on Mrs. Gerstner's time, efforts and energy became ·more numerous and exceedingly exacting, for then Mrs. Kelly was practically an invalid and almost bedridden. Nevertheless, Mrs. Gerstner continued to render the mentioned services, and did not cease her efforts in behalf of Mrs. Kelly, until February 26, 1950, the cessation occurring because of a rundown condition and pursuant to the instructions of her physician. Mrs. Kelly, on that date, was removed to the home of· her nephew who together with his wife, provided the required care until her death on September 29, 1950.

Obviously, the trial judge entertained the view,· just as we do, that appellants should receive something, for he non-suited their· demands instead of dismissing them with prejudice. In rendering his judgment he commented as follows:

"The court finds itself in the position of asking itself: How much is due plaintiffs, in view of the evidence adduced upon the trial of this cause?

"The court has carefully considered, and reviewed, the evidence herein with a view to properly. and correctly answering the above question. ·

"In the court's opinion the evidence shows that Mrs. Gerstner attended to her own household duties while rendering services to the decedent and furnishing meals to her.

"The evidence also shows that other persons were rendering services and furnishing food to the decedent during the same period claimed by Mrs. Gerstner.

"There is no positive affirmative proof of the average number of hours per day during which Mrs. Gerstner rendered services to Mrs. Kelly, the number of meals furnished and what they consisted of.

"It may be that Mr. and Mrs. Gerstner are entitled to recover something; but the court finds itself unable to determine from the evidence, what amount, if any, is due to plaintiffs."

Apparently the value of the services rendered by Mrs. Gerstner could not and cannot be proved with any degree of exactness. She was not ·a professional nurse nor a maid, such as would be available for regular employment and hired to perform particular duties for a specified wage and period of time. Rather, she was a housewife, residing with her family in and taking care of an apartment separate from but adjoining that of Mrs. Kelly, and furnishing convenient and beneficial services to the latter only when and as they were needed. Furthermore, other persons contributed an indeterminable part of the re-

quired assistance and food, as pointed out by the trial judge, although not nearly so much as did Mrs. Gerstner. Therefore, what is proper remuneration for the Gerstners, and certainly some is due them, can be determined only by concluding what amount would be just and reasonable under all of the disclosed facts and circumstances.

After our thorough and careful study of the evidence in the record we have reached the conclusion that an award to appellants of $5,110, less the $15 admittedly received by them, is fair and reasonable compensation, and would do justice between the parties, for all of the services and food so furnished by Mrs. Gerstner. We have arrived at such amount by using an average of $3.50 per day for the period in question, or 1,460 days. This daily average is $4 less than that suggested by Mrs. Gerstner in her testimony.

For the reasons assigned the judgments appealed from are reversed and set aside, and it is now ordered, adjudged and decreed that Mrs. Mary Rudolph Gerstner and her husband, Frederick Anthony Gerstner, be recognized as creditors of, and have recovery from, the Succession of Mrs. Margaret Twohey Kelly in the amount of $5,095, together with legal interest from the date of judicial demand (January 9, 1951), and all costs of these proceedings.